UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RKH-1341

------------------------------X

UNITED STATES OF AMERICA ex rel.
ELLEN ZWEIFACH,

**STIPULATION AND
ORDER OF
SETTLEMENT**

v.

Civil Action No.
CV-03-2003

COMPREHENSIVE COUNSELING
CENTER, et al.,

(Amon. J.)

Defendants.

------------------------------X

IT IS HEREBY STIPULATED AND ORDERED THAT this action is settled in

accordance with the following terms and conditions:

## I. PARTIES

This Settlement Agreement ("Agreement") is entered into among the United

States of America, acting through the United States Department of Justice and on behalf of the

Office of Inspector General ("OIG-HHS") of the Department of Helath and Human Services

(HHS) (collectively the "United States"); Ellen Zweifach ("Zweifach" or the "Relator"); and

Comprehensive Counseling Center ("CCC"), and Barry Butner, (the "Defendants") (hereafter

referred to collectively as the "Parties"), through their authorized representatives.

## II. PREAMBLE

As a preamble to this Agreement, the Parties agree to the following:

A. CCC is a provider of mental health services. Its principal office is located in

Queens, New York. CCC owns and operates five clinics, located in Queens and Nassau County,

New York.

B. Barry Butner ("Butner") is an Owner and Director of CCC, as well as a

licensed psychologist.

     C. Relator is an individual resident of the State of New York. On June 16, 2003, Relator commenced an action by filing a Complaint (the "Qui Tam Complaint") pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. §§ 3730 (b)-(h), in the United States District Court for the Eastern District of New York, *United States ex rel. Zweifach v. Comprehensive Counseling Center*, No. CV-03-2003 (E.D.N.Y.) (the "Civil Action").

     D. The United States filed a Notice of Intervention in the Civil Action on or about August 31, 2006.

     E. The United States contends that the Defendants submitted or caused to be submitted claims for payment to the Medicare Program (Medicare), Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395hhh.

     F. The United States contends that it has certain civil claims, as specified in Paragraph 2, below, against the Defendants for engaging in the following conduct during the period 1994 through 2003: The Defendants (including Arthur Laifer ("Laifer"), who is not a party to this agreement) knowingly presented or caused to be presented false claims to Medicare, by seeking reimbursement for psychological counseling services rendered by an unlicensed individual. The claims for reimbursement certified that the psychological counseling services were provided by Butner, a psychologist licensed by the State of New York, when in fact the services were provided by Laifer, a non-licensed individual (hereinafter referred to as the "Covered Conduct").

     G. The United States also contends that it has certain administrative claims, as specified in Paragraph 4, below, against the Defendants for engaging in the Covered Conduct.

H. This Agreement is neither an admission of liability by the Defendants nor a concession by the United States that its claims are not well founded.

I. To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, the Parties reach a full and final settlement of the claims in the Qui Tam Complaint and the Complaint-in-Intervention pursuant to the Terms and Conditions herein.

### III. TERMS AND CONDITIONS

1. The Defendants, jointly and severally, agree to pay the United States $300,000.00 (the "Settlement Amount"). The United States agrees to pay $54,000.00 of the Settlement Amount to Relator. The Defendants further agree to pay $30,000.00 for Relator's expenses and attorney's fees and costs. The foregoing payments shall be made as follows:

a. The Defendants agree to pay the full Settlement Amount to the United States no later than November 2, 2007. Payment shall be made by check payable to the United States Treasury, which shall be delivered to the Office of the United States Attorney, Eastern District of New York . The date of payment may be extended only upon the written consent of the United States, the Defendants, and the Relator. Without the written consent of each, which consent may be withheld for any or no reason, this date cannot be extended.

b. Contingent upon the United States receiving the Settlement Amount from the Defendants, within sixty (60) days after the United States' receipt of the Settlement Amount, the United States agrees to pay $54,000.00 to Relator by electronic funds transfer pursuant to instructions to be provided by counsel for the Relator.

c. The Defendants agree to pay $30,000.00 for counsel fees, expenses and costs no later than November 2, 2007, pursuant to written instructions to be provided by

Relator's counsel. This date may be extended only upon the written consent of the United States, the Defendants, and the Relator. Without the written consent of each, which consent may be withheld for any or no reason, this date cannot be extended.

2. Subject to the exceptions in Paragraph 5, below, in consideration of the obligations of the Defendants set forth in this Agreement, conditioned upon the Defendants full payment of the Settlement Amount and all other payments under Paragraph 1, and subject to Paragraph 16 herein (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement or any payment under the Agreement), the United States (on behalf of itself, its officers, agents, agencies, and departments) agrees to release the Defendants from any civil or administrative monetary claim the United States has or may have for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act; 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust enrichment, and fraud.

3. Subject to the exceptions in Paragraph 5, below, in consideration of the obligations of the Defendants in this Agreement, conditioned upon the Defendants full payment of the Settlement Amount and all other payments under Paragraph 1, and subject to Paragraph 16 herein (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement or any payment under the Agreement), Relator, for herself and for her heirs, successors, attorneys, agents, and assigns, agrees to release the Defendants, together with CCC's current and former parent corporations, direct and indirect subsidiaries, and affiliates, officers, directors, and the successors and assigns of any of them, from any civil monetary claim (including attorneys' fees, costs, and expenses of every kind and however denominated) the

-4-

United States may have for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733.

       4. In consideration of the obligations of the Defendants in this Agreement and the Integrity Agreement ("IA") entered into between OIG-HHS and the Defendants, conditioned upon the Defendants full payment of the Settlement Amount and all other payments under Paragraph 1, and subject to Paragraph 16 herein (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement or any payment under the Agreement), the OIG-HHS agrees to release and refrain from instituting, directing, or maintaining any administrative action seeking exclusion from Medicare, Medicaid, and other Federal health care programs (as defined in 42 U.S.C. § 1320a-7b(f)) against the Defendants under 42 U.S.C. § 1320a-7a (Civil Money Penalties Law) or 42 U.S.C. 1320a-7(b)(7) (permissive exclusion for fraud, kickbacks, and other prohibited activities) for the Covered Conduct, except as reserved in Paragraph 5, below, and as reserved in this Paragraph. The OIG-HHS expressly reserves all rights to comply with any statutory obligations to exclude the Defendants from Medicare, Medicaid, and other Federal health care program under 42 U.S.C. § 1320a-7(a) (mandatory exclusion) based upon the Covered Conduct.

       5. Notwithstanding any term of this Agreement, specifically reserved and excluded from the scope and terms of this Agreement as to any entity or person (including the Defendants and Relator) are the following claims of the United States:

       a. Any civil, criminal, or administrative liability arising under Title 26, U.S. Code (Internal Revenue Code);

       b. Any criminal liability;

c. Except as explicitly stated in this Agreement, any administrative liability, including mandatory exclusion from Federal health care programs;

d. Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

e. Any liability based upon such obligations as are created by this Agreement;

f. Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

g. Any liability for failure to deliver goods or services due; and

h. Any civil or administrative liability of individuals (including current or former owners, directors, officers, employees, agents, or shareholders of the Defendants) who receive written notification that they are the target of a criminal investigation, are indicted, charged, or convicted, or who enter into a plea agreement related to the Covered Conduct.

6. Relator and her heirs, successors, attorneys, agents, and assigns agree not to object this Agreement and agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C.§ 3730(c)(2)(B) and, conditioned upon receipt of the payments described in Paragraph 1, Relator, for herself and for her heirs, successors, attorneys, agents, and assigns, agrees to release the United States, its officers, agents, and employees, from any claims arising from or relating to 31 U.S.C. § 3730; for any claims arising from the filing of the Civil Action; and from any other claims for a share of the Settlement Amount; and in full settlement of any claims Relator may have under this Agreement. This Agreement does not resolve or in any manner affect any claims the Untied States has or may

-6-

have against the Relator arising under Title 26, U.S. Code (Internal Revenue Code), or any claims arising under this Agreement.

7. Conditioned upon receipt of the payments described in Paragraph 1.c, the Relator, for herself, and for her heirs, successors, attorneys, agents, and assigns, agrees to release the Defendants, its officers, agents, and employees, from any liability to Relator arising from the filing of the Civil Action, or under 31 U.S.C. § 3730(d) for expenses or attorney's fees and costs.

8. The Defendants waive and shall not assert any defenses the Defendants may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment to the Constitution, or under the Excessive Fines Clause in the Eighth Amendment to the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action. Nothing in this Paragraph or any other provision of this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

9. The Defendants fully and finally release the United States, its agencies, employees, servants, and agents from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that the Defendants have asserted, or could have asserted, or may assert in the future against the United States, its agencies, employees, servants, and agents related to the Covered Conduct and the United States' investigation and prosecution thereof.

10. The Defendants fully and finally release Relator and her heirs, successors,

attorneys, agents, and assigns from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that the Defendants have asserted, could have asserted, or may assert in the future against the Relator or her heirs, successors, attorneys, agents, and assigns to the Covered Conduct and her investigation and prosecution thereof.

11. The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare carrier or intermediary or any state payer, related to the Covered Conduct; and the Defendants shall not resubmit to any Medicare carrier or intermediary or any state payer any previously denied claims related to the Covered Conduct, and shall not appeal any such denials of claims.

12. The Defendants agree to the following:

a. <u>Unallowable Costs Defined</u>: That all costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395hhh and 1396-1396v; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of the Defendants, its present or former officers, directors, employees, shareholders, and agents in connection with the following shall be "unallowable costs" on government contracts and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP):

(1) the matters covered by this Agreement;

(2) the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

(3) the Defendants' investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with

-8-

the matters covered by this Agreement (including attorney's fees);

(4) the negotiation and performance of this Agreement;

(5) the payment the Defendants make to the United States pursuant to this Agreement and any payments that the Defendants may make to Relator, including costs and attorneys fees; and

(6) the negotiation of, and obligations undertaken pursuant to the IA to:

(i) retain and independent review organization to perform annual reviews as described in Section III of the IA; and

(ii) prepare and submit reports the OIG-HHS. However, nothing in this Paragraph 12.a.(6) that may apply to the obligations undertaken pursuant to the IA affects the status of costs that are not allowable based on any other authority applicable to the Defendants. (All costs described or set forth in this Paragraph 12.a. are hereafter "unallowable costs.")

b. Future Treatment of Unallowable Costs: These unallowable costs shall be separately determined and accounted for by the Defendants, and the Defendants shall not charge such unallowable costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such unallowable costs through any cost report, cost statement, information statement, or payment request submitted by the Defendants or any of its subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

c. Treatment of Unallowable Costs Previously Submitted for Payment: The Defendants further agree that within 90 days of the Effective Date of this Agreement they

shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or

contractors, and Medicaid and FEHBP fiscal agents, any unallowable costs (as defined in this

Paragraph) included in payments previously sought from the United States or any State Medicaid

program, including, but not limited to, payments sought in any cost reports, cost statements,

information reports, or payment requests already submitted by the Defendants or any of their

subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements,

information reports, or payment requests, even if already settled, be adjusted to account for the

effect of the inclusion of the unallowable costs.  The Defendants agree that the United States, at a

minimum, shall be entitled to recoup from the Defendants any overpayment plus applicable

interest and penalties as a result of the inclusion of such unallowable costs on previously-

submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the

United States pursuant to the direction of the Department of Justice and/or the affected agencies.

The United States reserves its rights to disagree with any calculations submitted by the

Defendants or any of its subsidiaries or affiliates on the effect of inclusion of unallowable costs

(as defined in this Paragraph) on the Defendants or any of its subsidiaries or affiliates' cost

reports, cost statements, or information reports.

d.  Nothing in this Agreement shall constitute a waiver of the rights of the

United States to audit, examine, or re-examine the Defendants' books and records to determine

that no unallowable costs have been claimed in accordance with the provisions of this Paragraph.

13.  This Agreement is intended to be for the benefit of the Parties only.  Except

to the extent provided in Paragraph 14 below, the Parties do not release any claims against any

other person or entity.

14. The Defendants waive and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

15. The Defendants warrant that they have reviewed their financial situation and that they currently are solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and shall remain solvent following payment to the United States of the Settlement Amount. Further, the Parties warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to the Defendants, within the meaning of 11 U.S.C. § 547(c)(1); and (b) conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange. Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended and do, in fact, represent a reasonably equivalent exchange of value which is not intended to hinder, delay, or defraud any entity to which the Defendants were or became indebted to on or after the date of this transfer, all within the meaning of 11 U.S.C. § 548(a)(1).

16. If within 91 days of the Effective Date of this Agreement or of any payment made hereunder, the Defendants commence, or a third party commences, any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors, (a) seeking to have any order for relief of the Defendants' debts, or seeking to adjudicate the Defendants as bankrupt or insolvent; or (b) seeking appointment of a receiver, trustee, custodian,

or other similar official for the Defendants or for all or any substantial part of the Defendants' assets, the Defendants agrees as follows:

      a. The Defendants' obligations under this Agreement may not be avoided pursuant to 11 U.S.C. §§ 547, and the Defendants shall not argue or otherwise take the position in any such case, proceeding, or action that: (i) the Defendants' obligations under this Agreement may be avoided under 11 U.S.C. §§ 547; (ii) the Defendants were insolvent at the time this Agreement was entered into, or became insolvent as a result of the payment made to the United States; or (iii) the mutual promises, covenants, and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to the Defendants.

      b. If the Defendants' obligations under this Agreement are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the United States, at its sole option, may rescind all of the releases it has agreed to provide pursuant to this Agreement, and may bring any civil and/or administrative claim, action, or proceeding against the Defendants for the claims that would otherwise be covered by the releases provided in Paragraphs 2 and 4 herein. The Defendants agree that (i) any such claims, actions, or proceedings brought by the United States (including any proceedings to exclude the Defendants from participation in Medicare, Medicaid, or other Federal health care programs) are not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the action, case, or proceeding described in the first clause of this Paragraph, and that the Defendants shall not argue or otherwise contend that the United States' claims, actions, or proceedings are subject to an automatic stay; (ii) the Defendants shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any

-12-

such civil or administrative claims, actions, or proceeding which are brought by the United States within 60 calendar days of written notification to the Defendants that the releases have been rescinded pursuant to this Paragraph, except to the extent that such defenses were available on September 29, 1999; (iii) the United States has a valid claim against the Defendants in the amount of $ 10,670,000.00 and the United States may pursue its claim in the case, action, or proceeding referenced in the first clause of this Paragraph, as well as in any other case, action, or proceeding.

c. The Defendants acknowledge that its agreements in this Paragraph are provided in exchange for valuable consideration provided in this Agreement.

17. Except as expressly provided to the contrary in this Agreement, each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

18. The Defendants represent that this Agreement is freely and voluntarily entered into without any degree of duress or compulsion whatsoever.

19. Relator represents that this Agreement is freely and voluntarily entered into without any degree of duress or compulsion whatsoever.

20. This Agreement is governed by the laws of the United States. The Parties agree that the exclusive jurisdiction and venue for any dispute arising between and among the Parties under this Agreement shall be the United States District Court for the Eastern District of New York, except that disputes arising under the IA shall be resolved exclusively under the dispute resolution provisions in the IA.

21. This Agreement constitutes the complete agreement between the Parties.

-13-

This Agreement may not be amended except by written consent of the Parties.

22. Upon receipt of the payments described in Paragraphs 1.a., 1.b., and 1.c. above, the United States and the Relator shall promptly sign and file in the Civil Action a Joint Notice of Dismissal with prejudice, pursuant to Fed. R. Civ. P. 41(a)(1), of the Civil Action pursuant to the terms of the Agreement.

23. The individuals signing this Agreement on behalf of the Defendants represent and warrant that they are authorized by the Defendants to execute this Agreement. The individuals signing this Agreement on behalf of the Relator represent and warrant that he is authorized by Relator to execute this Agreement. The United States signatories represent that they are signing this Agreement in their official capacities and that they are authorized to execute this Agreement.

24. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

25. This Agreement is binding on the Defendants' successors, transferees, heirs, and assigns.

26. This Agreement is binding on the Relator's successors, transferees, heirs, and assigns.

27. All Parties consent to the United State's disclosure of this Agreement and information about this agreement to the public.

28. This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

-14-

<u>THE UNITED STATES OF AMERICA</u>

BENTON J. CAMPBELL
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

DATED: ~~October~~ *November* 21, 2007        BY: _____

RICHARD K. HAYES
Assistant U.S. Attorney


DATED: ~~October~~ *December* 4, 2007        BY: _____

GREGORY E. DEMSKE
Assistant Inspector General of Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health
and Human Services


<u>DEFENDANTS</u>


COMPREHENSIVE COUNSELING CENTER


DATED: October 26, 2007        BY: _____

Barry Butner, PhD.
President

_____

Barry Butner, PhD., individually


-15-

FOX HORAN & CAMERINI LLP

DATED: October 26, 2007          BY:

WILLIAM BRODSKY, ESQ.
Attorney for Defendants Comprehensive
Counseling Center and Barry Butner, PhD.
825 Third Avenue
New York, New York 10022


RELATOR


DATED: October___, 2007          _____
                                 Ellen Zweifach


DATED: October___, 2007          _____
                                 TIMOTHY J.MCINNIS, ESQ
                                 Attorney for Relator Ellen Zweifach
                                 521 Fifth Avenue
                                 Suite 1700
                                 New York, New York 10175


SO ORDERED:     December
On this  12  day of November  , 2007.

s/ Carol B. Amon

_____
HONORABLE CAROL B. AMON
United States District Judge


-16-

FOX HORAN & CAMERINI LLP

DATED: October ___, 2007          BY: _____

                                           WILLIAM BRODSKY, ESQ.
                                           Attorney for Defendants Comprehensive
                                           Counseling Center and Barry Butner, PhD.
                                           825 Third Avenue
                                           New York, New York 10022

RELATOR

DATED: October 31, 2007          _____
                                           Ellen Zweifach

DATED: October 31, 2007          _____
                                           TIMOTHY J.MCINNIS, ESQ
                                           Attorney for Relator Ellen Zweifach
                                           521 Fifth Avenue
                                           Suite 1700
                                           New York, New York 10175

SO ORDERED:   December
On this 12 day of November , 2007.

s/ Carol B. Amon
_____
HONORABLE CAROL B. AMON
United States District Judge

-16-